UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DAVID DeFELICE,

                Plaintiff,

                                          **Hon. Hugh B. Scott**

                v.                                        **17CV1181**

                                                    **CONSENT**

COMMISSIONER,                                  **Order**

                Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 14 (plaintiff), 20 (defendant Commissioner)). Having considered the Administrative Record, filed as Docket No. 7 (reference noted hereinafter as "[R. __]"), and the papers of both sides, this Court reaches the following decision.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits. The parties consented to proceed before a Magistrate Judge (Docket No. 9).

## PROCEDURAL BACKGROUND

The plaintiff ("David DeFelice" or "plaintiff") filed an application for disability insurance benefits on November 13, 2013, and SSI benefits on December 2, 2013 [R. 11]. Those applications were denied initially. The plaintiff appeared before an Administrative Law

Judge ("ALJ"), who considered the case de novo and concluded, in a written decision dated June 29, 2016, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on September 19, 2017, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on November 17, 2017 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 14, 20), and plaintiff duly replied (Docket No. 22). This case was scheduled for oral argument on January 23, 2019 (Docket No. 21) but upon further consideration, this Court then determined that the motions could be decided on the papers (Docket No. 23).

## FACTUAL BACKGROUND

Plaintiff, a 46-year-old as of the September 12, 2013, onset date had a high school education, last worked as a cashier and fundraiser [R. 23, 22-23]. Plaintiff claims the following impairments deemed severe by the ALJ: ischemic heart disease and obesity [R. 13]. On September 2, 2015, plaintiff was 6', 1" and weighed 338 pounds, with a body mass index of 44.59, deemed to be morbidly obese [R. 17-18]. Plaintiff claimed other maladies that were not found to be severe by the ALJ, namely hernias, chronic obstructive pulmonary disorder (or "COPD"), obstructive sleep apnea, hypertension, hyperlipidemia, plantar fasciitis, edema, bilateral knee pain, leukocytosis, and mental impairment [R. 14-17].

## MEDICAL AND VOCATIONAL EVIDENCE

The ALJ found that plaintiff had a residual functional capacity to perform light work [R. 18]. The ALJ also found that plaintiff has some restrictions on performing most light work, such as only occasional climbing of ramps or stairs, ladders, ropes, and scaffolds, occasional

balancing, stooping, kneeling, crouching, or crawling [R. 18]. The ALJ concluded that plaintiff was able to perform his past relevant work [R. 22-23]. With this capacity and plaintiff's additional limitations from performing a full range of light work, the ALJ posed hypotheticals to the vocational expert regarding a claimant with plaintiff's background and residual functional capacity. The expert opined that this hypothetical claimant like plaintiff was able to perform such occupations as a telephone survey worker, host, or ticket seller (all light exertion jobs) [R. 24]. As a result, the ALJ held that plaintiff was not disabled [R. 24].

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or

her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

Thus, to determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the decision rendered denying disability coverage. First, at Step Two of the five-step analysis, plaintiff contends that the ALJ did not properly address several of her ailments that the ALJ did not deem to be severe (Docket No. 14, Pl. Memo. at 15-21). He contends that this failure infected analysis in forming the residual functional capacity at Step Four and the hypotheticals posed to the vocational expert at Step Five. Plaintiff claims that the ALJ did not consider (or did not consider fully) his sleep apnea, COPD, recurrent hernia as well as persistent abdominal pain, bilateral knee pain, palpitations, and fatigue (id. at 15, 17 & n.25). He also lists some ailments, shortness of breath, dyspnea with activity (id. at 17) that appear to by symptoms of COPD, but at least one doctor diagnosed these as separate ailments [R. 457]. By not

5

considering the non-severe impairments (including consideration with severe impairments), the ALJ erred in coming up with the residual functional capacity (Docket No. 14, Pl. Memo. at 19).

Defendant responds that the ALJ did consider plaintiff's cardiac disorders when deeming his ischemic heart disease to be severe (Docket No. 20, Def. Memo. at 13). The ALJ also considered several of the ailments plaintiff claims but found that they were not severe (id. at 14; [R. 14-17]). Plaintiff had the burden of establishing that these impairments were severe (Docket No. 20, Def. Memo. at 14) and plaintiff did not do so here. As for his COPD, defendant notes that plaintiff was taking Albuterol and Spiriva, but stopped taking these medications, ceasing Albuterol because plaintiff believed he no longer needed it (id.; [R. 14, 453]). If plaintiff could stop with this medication, defendant concludes that his COPD did not cause more than minimal limitation in his ability to work (Docket No. 20, Def. Memo. at 15). As for plaintiff's recurrent hernias, he had a hernia repair in 2014 and followed up without further complaints (id.; [R. 15, 480]). He had a second hernia repair in 2015 with no complications and another hernia in 2016 but without surgical intervention because plaintiff was asymptomatic (Docket No. 20, Def. Memo. at 15; [R. 16, 679-81, 784]). Plaintiff was advised to quit smoking and lose weight so that a future surgery would have a higher rate of success but plaintiff declined surgery and reported he was doing well (Docket No. 20, Def. Memo. at 15; [R. 16, 784]).

Next, plaintiff complains that the ALJ, at Step Four, improperly evaluated the opinions of consultative examiner Dr. Donna Miller [R. 423-26, 21], when the ALJ gave that opinion little weight [R. 21] in favor of the incomplete 2012 opinion of Dr. Nikita Dave [R. 360, 20-21, 22] (Docket No. 14, Pl. Memo. at 21-27). Plaintiff also considers Dr. Dave's 2012 opinion to be stale (Docket No. 22, Pl. Reply Memo. at 3). As a result, the residual functional capacity was

6

not supported by evidence in the record (Docket No. 14, Pl. Memo. at 20; cf. Docket No. 20, Def. Memo. at 16). Plaintiff argues that both evaluations were vague and incomplete that the balance of plaintiff's medical record from 2012-14 showed that his condition worsened, especially hernias that both doctors did not reference (Docket No. 14, Pl. Memo. at 23-24).

The ALJ accorded Dr. Dave's opinion great weight and incorporated that opinion into the residual functional capacity assessment [R. 20-21]. On November 19, 2012, Dr. Dave examined plaintiff and found that plaintiff had moderate limitations for prolonged standing and walking [R. 360, 20]. The ALJ rested the residual functional capacity's medical findings on Dr. Dave and Dr. James Jang's opinions and other examining and treating medical records and plaintiff's own testimony [R. 22]. The ALJ cites to plaintiff's statements that he was advised to not lift more than 25 pounds, that he claimed he would walk and or stand for 40 minutes before severe pain sets in and he complained of severe dizziness if he stands too long [R. 22, 78, 82-83].

The ALJ, however, gave little weight to Dr. Miller's evaluation because it lacked a function-by-function assessment of plaintiff's ability to perform work activities and not supported by the medical record and contracted by Dr. Miller's own examination findings. A cursory comparison of the evaluations of Drs. Dave and Miller show that both doctors found similar general appearance, gait and station and musculoskeletal findings [R. 358, 359 (Dr. Dave), 424, 425 (Dr. Miller)]. Plaintiff's chief complaints to Dr. Dave included pain while standing or walking [R. 357], while Dr. Miller did not note that but stated plaintiff complained of shortness of breath, with exertional activity causing shortness of breath [R. 423]. Dr. Miller's evaluation does not indicate how she reached the conclusion that plaintiff should avoid exertion. The only difference is plaintiff's complaints to Dr. Miller of shortness of breath would lead to

7

the exertion limitation. Like Dr. Dave [R. 359], Dr. Miller found that plaintiff's chest and lungs were normal [R. 425]. The doctors reached different prognoses (Dr. Miller stable [R. 426], Dr. Dave fair [R. 360]).

Finally, plaintiff argues that the Appeals Council failed to account for new and material evidence he produced from the Niagara Falls Medical Center from July 12, 2016 [R. 46-51] (Docket No. 14, Pl. Memo. at 27-30). This Court is ruling on the parties' motions for judgment on this question.

The Appeals Council rejected plaintiff's proffered July 2016 material because it post-dated the ALJ's decision and did not relate to the period at issue [R. 2]. Defendant further argues that this new evidence would not change the outcome because of the inconsistency in the reliability of plaintiff's pain and disability allegations (Docket No. 20, Def. Memo. at 20; [R. 50]).

The Appeals Council receives "additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision," 20 C.F.R. § 404.970(a)(5) (Docket No. 14, Pl. Memo. at 27; Docket No. 20, Def. Memo. at 20). "Additional evidence may relate to the relevant time period even if it concerns events after the ALJ's decision, provided the evidence pertains to the same condition previously complained of by the plaintiff," Hightower v. Colvin, No. 12CV6475, 2013 U.S. Dist. LEXIS 100735, at *9 (W.D.N.Y. July 18, 2013) (Telesca, J.) (Docket No. 14, Pl. Memo. at 27); see Brown v. Apfel, 174 F.3d 59, 64-65 (2d Cir. 1999) (per curiam) (considering evidence of symptoms six months after the ALJ's decision, but these symptoms related to a previously complained of condition).

Putting to one side whether that new evidence would change the outcome (since the Appeals Council did not deny review on that basis), the issue is whether the July 2016 assessments relate to the period before the June 29, 2016, decision to require the Appeals Council's consideration. Plaintiff states that the July assessment (taken less than a month after the June ALJ decision) related to already existing conditions (Docket No. 14, Pl. Memo. at 27; see also Docket No. 22, Pl. Reply Memo. at 6) while defendant merely adopts the Appeals Council's conclusion that the assessments did not relate to the period at issue. The Appeals Council, however, rendered this conclusion without stating any basis, save the dates of the assessments. Given the plaintiff's claim that the July assessments are related to plaintiff's condition as of June 2016, the Appeals Council **erred** in rejected the July assessments merely because they were rendered days after the ALJ's decision. The Appeals Council needs to consider these assessments as part of the record (even if that consideration leads to affirmance of the denial).

Therefore, plaintiff's motion for judgment remanding for further administrative proceedings (Docket No. 14) is **granted** on this basis. Upon remand, if the Appeals Council considers the July 2016 assessments as new, material evidence and determine that this matter should be remanded to the ALJ, the other issues plaintiff raises here may be considered.

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket No. 14) judgment on the pleadings is **GRANTED**, and defendant's motion (Docket No. 20) for judgment on the pleadings is **DENIED**. Thus, the decision of the defendant Commissioner is **vacated and remanded** for further proceedings consistent with the above decision before the Appeals Council pursuant to

sentence four of 42 U.S.C. § 405(g), see Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of the Court shall close this case.

 So Ordered.

                 *s/Hugh B. Scott*
                 Hon. Hugh B. Scott
              United States Magistrate Judge

Buffalo, New York
March 27, 2019